# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **NOVACLOUD LICENSING, LLC,** | |
| **Plaintiffs,** | **Civil Action No.: 2:25-cv-1228** |
| **vs.** | |
| **MICROSOFT CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NovaCloud Licensing, LLC ("NovaCloud") files this Complaint for Patent Infringement against Defendant Microsoft Corporation ("Microsoft"), and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2.      Microsoft has infringed and continues to infringe at least one claim of U.S. Patent No. 8,401,028 ("the '028 Patent").

3.      Microsoft has infringed and continues to infringe at least one claim of U.S. Patent No. 8,825,867 ("the '867 Patent").

4.      Microsoft has infringed and continues to infringe at least one claim of U.S. Patent No. 10,225,173 ("the '173 Patent").

5.      Microsoft has infringed and continues to infringe at least one claim of U.S. Patent No. 10,430,172 ("the '172 Patent").

6.      Microsoft infringes directly, literally and/or by the doctrine of equivalents, and/or induces infringement of the '028, '867, '173, and '172 Patents (collectively, the "Asserted

Patents") by developing, making, using, selling, offering for sale, and/or importing into the United States products, infrastructure, and/or services that incorporate the patented technology.

7.      NovaCloud seeks damages and other relief for Microsoft's infringement.

## THE PARTIES

8.      Plaintiff NovaCloud Licensing, LLC is a Delaware limited liability company with its principal place of business at 228 Hamilton Avenue, 3rd Floor, Palo Alto, CA 94301.

9.      NovaCloud was formed in 2024 to take ownership of and provide access to the fundamental patented technology that emerged from Ericsson's pioneering research in cloud computing, networking, and content delivery.[1] This technology is integral to today's Infrastructure-as-a-Service and Platform-as-a-Service cloud computing platforms, content delivery networks, and datacenters and, as such, underpins many of the consumer-facing technologies and services people use daily, such as file storage and access, streaming services, cloud-based Software-as-a-Service applications, and communication and collaboration tools.

10.     Defendant Microsoft is a Washington corporation with its principal place of business at 1 Microsoft Way, Redmond, Washington 98052.

11.     Microsoft may be served through its registered agent CSC Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12.     On information and belief, Microsoft makes, uses, sells, offers for sale, and/or imports into the United States, including in this District, products and services, including, without limitation, Azure Traffic Manager, Azure Application Gateway for Containers, Microsoft OneWAN, and Azure Research Manager.

13.     In February 2024, Microsoft interacted with Ericsson regarding a portfolio of

---

[1] https://www.novacloudllc.com/#portfolio.

Ericsson's patents that were ultimately acquired by NovaCloud.

14.    In June 2024, NovaCloud initiated discussions with Microsoft concerning its patent portfolio. NovaCloud and Microsoft met in October 2024 to discuss NovaCloud's patent portfolio. The parties interacted regarding the portfolio in October 2024, March 2025, April 2025, May 2025, June 2025, July 2025, August 2025, September 2025, and October 2025. Thus far, NovaCloud and Microsoft have been unable to agree to a license.

## JURISDICTION AND VENUE

15.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code, including 35 U.S.C. § 271.

16.    The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

17.    This Court has personal jurisdiction over Microsoft. Microsoft has committed acts within this District giving rise to this action and established minimum contacts such that the exercise of jurisdiction over Microsoft would not offend traditional notions of fair play and substantial justice.

18.    Microsoft has continuous and systematic business contacts with the State of Texas. Microsoft, directly or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by offering for sale, selling, and advertising its products and/or services in the State of Texas and the Eastern District of Texas. Microsoft, directly and through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more of its Accused Infrastructure and Services into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in the State of Texas and the Eastern District of Texas. These products and/or services have been and continue to be purchased and used by consumers in the State of Texas and the Eastern District of Texas. In addition, on information and belief, Microsoft conducts operations related to the Accused Infrastructure and Services in its Eastern District of

Texas facilities, as discussed below.

19.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). Microsoft is authorized to do business in the State of Texas, has transacted business in the Eastern District of Texas, and has committed acts of infringement in the Eastern District of Texas. Microsoft has, within this District, committed acts of patent infringement and has regular and established physical places of business.

20.     Microsoft maintains millions of dollars of business and personal property in Collin County, within this District, as shown below.[2]



21.     Similarly, Defendant maintains significant business and personal property in Denton County, within this District, as shown below.[3]

---

[2] https://esearch.collincad.org/ (last visited Dec. 13, 2025) (search results for "Microsoft").
[3] https://www.dentoncad.com/property-search (last visited Dec. 13, 2025) (search results for "Microsoft").



22.     Microsoft has several corporate offices in the State of Texas, employing hundreds of persons. On information and belief, these offices are located in at least the following cities: Austin, Houston, Irving, and San Antonio.[4]

23.     Further, Microsoft operates Microsoft Windows Stores within at least ten Best Buy retail locations throughout the State of Texas, including in this District, e.g., 2800 N Central Expressway, Plano, Texas 75074[5]; 3333 Preston Road, Suite 200, Frisco, Texas 75034[6]; and 2601 S Stemmons Freeway, Suite 300, Lewisville, Texas 75067[7].

24.     These Microsoft Windows Stores are operated by Microsoft within Best Buy stores and are regular and established places of business of Microsoft. According to Microsoft, these Windows Stores are a "comprehensive store-within-a-store," with dedicated "Microsoft specialists" serving Best Buy customers within this "unique environment."[8]

25.     Microsoft holds these Windows Stores out as discrete retail locations. Former Microsoft Chief Marketing Officer described these store-in-store locations as "department-level

---

[4] https://www.microsoft.com/en-us/us-locations (last visited Dec. 13, 2025).
[5] https://stores.bestbuy.com/tx/plano/2800-n-central-expy-202.html (last visited Dec. 13, 2025).
[6] https://stores.bestbuy.com/tx/frisco/3333-preston-rd-180.html (last visited Dec. 13, 2025).
[7] https://stores.bestbuy.com/tx/lewisville/2601-s-stemmons-fwy-258.html (last visited Dec. 13, 2025).
[8] https://news.microsoft.com/source/2013/06/13/microsoft-and-best-buy-announce-the-windows-store-only-at-best-buy-2/ (last visited Dec. 13, 2025).

takeovers" that are "unlike a lot of store-within-a-store concepts."[9] Microsoft leases the spaces for these Windows Stores from Best Buy and controls its own pricing and merchandise selection.[10]

26.    In addition to maintaining its stores within Best Buy retail locations, and as shown by its property listings in Collin County, Microsoft has approximately $2 million of property, including data servers, at Aligned Data Center located within this District at 2800 Summit Ave., Plano, Texas 75074.[11]

27.    Similarly, Microsoft has announced a deal with CoreWeave to allow Microsoft to use CoreWeave's Plano data center for its Microsoft Azure AI workloads.[12]

28.    Further compounding Microsoft's presence in this District, it announced in May 2024 that it had purchased 500 acres of land to the east of Plano to construct a new data center.[13] Microsoft also maintains an Azure point of presence ("POP") within this District, in Plano.[14]

## THE '028 PATENT

29.    On March 19, 2013, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,401,028, entitled "Selection of an Edge Node in a Fixed Access Communication

---

[9] https://blogs.windows.com/windowsexperience/2013/06/13/talking-retail-the-new-windows-store-only-at-best-buy/ (last visited Dec. 13, 2025).

[10] https://www.startribune.com/best-buy-bets-big-on-store-within-store-concepts/215301161 (last visited Dec. 13, 2025).

[11] https://aligneddc.com/blog/aligned-data-centers-opens-ultra-efficient-data-center-in-plano/; https://dallasinnovates.com/north-texas-aligned-data-centers-to-be-acquired-for-40-billion-by-blackrock-nvidia-xai-microsoft-and-others/.

[12] https://www.datacenterdynamics.com/en/news/coreweave-plans-16bn-ai-cloud-data-center-in-plano-texas/ (last visited (Dec. 13, 2025).

[13] https://www.wspynews.com/news/local/big-tech-big-taxes-how-microsofts-data-center-will-benefit-plano/article_23d37cde-11f1-11ef-a412-9b29786215e1.html (last visited Dec. 13, 2025).

[14] https://learn.microsoft.com/en-us/azure/cdn/cdn-pop-locations (last visited Dec. 13, 2025); POPs are part of content delivery networks: "a distributed network of servers that can efficiently deliver web content to users. A content delivery network store[s] cached content on edge servers in point of presence (POP) locations that are close to end users, to minimize latency." https://learn.microsoft.com/en-us/azure/cdn/cdn-overview (last visited Dec. 13, 2025).

Network," to inventors Attila Mihaly, Andras Csaszar, Oktavian Papp, and Lars Westberg. The '028 Patent issued from an application filed on January 23, 2008. A true and correct copy of the '028 Patent is attached as Exhibit 1 and incorporated by reference.

30.     NovaCloud owns the '028 Patent and all rights to the '028 Patent necessary to bring this action.

31.     The '028 Patent discloses novel techniques for "allocating pooled nodes to a host in a fixed access network." '028 Patent at 1:8-19.

32.     Pursuant to 35 U.S.C. § 282, the '028 Patent is presumed valid.

33.     Claim 1 of the '028 Patent reads as follows:

A method for selecting an edge node from a plurality of edge nodes in a fixed access communications network, the method comprising:

at a selection node, receiving from a host entity a request for a network service;

obtaining, from a dynamically updated database, data comprising information relating to the status and capabilities of each edge node of the plurality of edge nodes;

on the basis of the retrieved data, selecting an edge node from the plurality of edge nodes, the selected edge node providing a path between the host entity and the requested network service; and

sending a response to the host entity, the response including information identifying the selected edge node.

34.     A person of ordinary skill in the art reading the '028 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of pooled nodes within networks, and that the invention provides for advancements in the field that were not routine, well-understood or conventional. Accordingly, each claim of the '028 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is

7

inventive. Further, the claimed improvements over prior art pooled nodes within networks are concrete and improve the capabilities of existing methods.

35.    A person of ordinary skill in the art reviewing the specification of the '028 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

## THE '867 PATENT

36.    On September 2, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,825,867, entitled "Two Level Packet Distribution with Stateless First Level Packet Distribution to a Group of Servers and Stateful Second Level Packet Distribution to a Server Within the Group," to inventors Mustafa Arisoylu, Abhishek Arora, and Prashant Anand. The '867 Patent issued from an application filed on May 4, 2012. A true and correct copy of the '867 Patent is attached as Exhibit 2 and incorporated by reference.

37.    NovaCloud owns the '867 Patent and all rights to the '867 Patent necessary to bring this action.

38.    The '867 Patent discloses novel techniques for packet distribution among servers in networking that enable two-level packet distribution with a stateless first level and distributed stateful second level. '867 Patent at 2:40-3:33. More specifically, the novel techniques enable "multi-level packet distribution" deployed on one or more network elements. '867 Patent at 3:1-5.

39.    Pursuant to 35 U.S.C. § 282, the '867 Patent is presumed valid.

40.    Claim 1 of the '867 Patent reads as follows:

A method, which is performed in one or more network elements that are in communication between clients that transmit packets and servers, of distributing the packets among the servers which are to process the packets, while providing stickiness of flows of the packets to servers assigned to process the packets of the flows, the method comprising the steps of:

receiving a first packet of an existing flow for which at least a second packet has already been received, at a static first level packet distribution module;

statically selecting a group of servers, from among a plurality of groups of the servers, for the first packet of the flow with the static first level packet distribution module, wherein statically selecting the group of servers does not involve using state that assigns the first packet of the flow to the selected group of servers;

distributing the first packet of the flow to a distributed stateful second level packet distribution system, wherein the distributed stateful second level packet distribution system is implemented on hardware that is distinct from hardware used to implement the static first level packet distribution module;

statefully selecting a server of the selected group of servers that is to process the first packet of the flow with the distributed stateful second level packet distribution system by accessing state that assigns processing of packets of the flow to the selected server; and

distributing the first packet of the flow to the selected server.

41.     A person of ordinary skill in the art reading the '867 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of packet distribution among servers, and that the invention provides for advancements in the field that were not routine, well-understood or conventional. Accordingly, each claim of the '867 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art packet distribution techniques are concrete and improve the capabilities of existing methods.

42.     A person of ordinary skill in the art reviewing the specification of the '867 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

## THE '173 PATENT

43.    On March 5, 2019, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 10,225,173, entitled "Method to Provide Elasticity in Transport Network Virtualisation," to inventors Paola Iovanna, Teresa Pepe, and Fabio Ubaldi. The '173 Patent issued from an application filed on September 29, 2014. A true and correct copy of the '173 Patent is attached hereto as Exhibit 3 and incorporated herein by reference.

44.    NovaCloud owns the '173 Patent and all rights to the '173 Patent necessary to bring this action.

45.    The '173 Patent discloses novel techniques for elasticity in network virtualization that "receiv[es] from network domains information about elasticity capability of physical paths in…network domains and summariz[es] physical paths in…network domains into virtual links. The method also comprises producing a topology of a virtual network overlaying the multi-domain network by associating elasticity parameters with the virtual links, wherein the elasticity parameters are inferred from the physical paths." '173 Patent at 2:6-13.

46.    Pursuant to 35 U.S.C. § 282, the '173 Patent is presumed valid.

47.    Claim 1 of the '173 Patent reads as follows:

A method for providing support for elasticity in network virtualization of a heterogeneous, multi-domain network, the method comprising:

receiving, from a plurality of network domains in the heterogeneous, multi-domain network, information about elasticity capability of physical paths in the plurality of network domains, the elasticity capability comprising the ability of each one of the plurality of network domains to add or release physical resources to meet service requirements;

summarizing the physical paths in the plurality of network domains into at least one virtual link;

producing a topology of a virtual network overlaying the heterogeneous, multi-domain network by associating elasticity parameters with the at least one virtual

link, wherein the elasticity parameters represent the elasticity capabilities of the physical paths.

48.    A person of ordinary skill in the art reading the '173 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of elasticity in network virtualization, and that the invention provides for advancements in the field that were not routine, well-understood or conventional. Accordingly, each claim of the '173 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art network virtualization elasticity techniques are concrete and improve the capabilities of existing methods.

49.    A person of ordinary skill in the art reviewing the specification of the '173 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

## THE '172 PATENT

50.    On October 1, 2019, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 10,430,172, entitled "Re-Configuration in Cloud Computing Environments," to inventors Joerg Niemoeller, Calin Curescu, Dimitri Mazmanov, and Konstantinos Vandikas. The '172 Patent issued from an application filed on September 3, 2012. A true and correct copy of the '172 Patent is attached hereto as Exhibit 4 and incorporated herein by reference.

51.    NovaCloud owns the '172 Patent and all rights to the '172 Patent necessary to bring this action.

52.    The '172 Patent discloses novel techniques for the "re-configuration of hosted applications in cloud computing environments." '172 Patent at 1:14-15.

53.    Pursuant to 35 U.S.C. § 282, the '172 Patent is presumed valid.

54.    Claim 1 of the '172 Patent reads as follows:

A computer program product comprising a non-transitory computer readable medium storing a data structure for use in a cloud computing environment, the data structure comprising:

a software template describing a flow of actions executable by a cloud management unit in the cloud computing environment for re-configuration of an application hosted by the cloud management unit and executable by the cloud management unit using a first software scheme, wherein the re-configuration relates to scaling of the hosted application and upgrading software instructions of the hosted application, wherein the first software scheme originates from the software template that allows adding, via a programming interface unit of the hosted application, additional actions to the flow of actions, without changing the existing actions in the re-configuration defined by the software template, wherein the data structure enables a dynamic change of the first software scheme as generated by the programming interface unit of the hosted application from the software template,

wherein the software template comprises the software instructions, and wherein the software instructions comprise:

a first portion of the software instructions non-editable by the programming interface unit of the hosted application;

a second portion of the software instructions allowed by the software template to be added to the software template by the programming interface unit of the hosted application, wherein the second portion of the software instructions is added to the software template, by the programming interface unit of the hosted application, to apply the software template of the data structure to the hosted application, and wherein the software template of the data structure is applied to the hosted application to generate a second software scheme; and

a third portion of the software instructions editable by the programming interface unit of the hosted application, wherein the third portion determines which of the first portion or the second portion of the software instructions needs to be executed by the programming interface unit of the hosted application.

55.    A person of ordinary skill in the art reading the '172 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of re-configuration of hosted applications in cloud computing environments, and that the invention provides for advancements in the field that were not routine, well-understood

12

or conventional. Accordingly, each claim of the '172 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art techniques for re-configuration of hosted applications in cloud computing environments are concrete and improve the capabilities of existing methods.

56.     A person of ordinary skill in the art reviewing the specification of the '172 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

## MICROSOFT'S INFRINGEMENT

57.     As detailed below, each element of at least one claim of each of the Asserted Patents is literally present in Microsoft's products, infrastructure, and/or services. To the extent that any element is not literally present, each such element is present under the doctrine of equivalents. NovaCloud's analysis below should not be taken as an admission that the preamble for any claim is limiting. While NovaCloud cites publicly available information, NovaCloud may rely on other forms of evidence to show infringement.

58.     Generally, the Accused Infrastructure and Services for the Asserted Patents include Microsoft's datacenter and network infrastructure and/or cloud computing services. Exemplary, non-limiting Accused Infrastructure and Services are identified in the attached claim charts.[15]

---

[15] The allegations provided are exemplary and without prejudice to NovaCloud's infringement contentions to be provided pursuant to the Federal Rules of Civil Procedure, the Court's scheduling order and/or local rules. NovaCloud's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Federal Rules of Civil Procedure, the Court's scheduling order and/or local rules. Identification of the Accused Infrastructure and Services, as well as a complete list of the infringed claims, will be provided in NovaCloud's infringement

## COUNT I: INFRINGEMENT OF THE '028 PATENT

59.    NovaCloud incorporates by reference the preceding paragraphs as if fully stated herein.

60.    Microsoft has been directly infringing the '028 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

61.    Microsoft is now directly infringing and/or indirectly infringing the '028 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

62.    Microsoft derives revenue from the activities relating to the Accused Infrastructure and Services. As explained below, these are covered by one or more claims of the '028 Patent, including but not limited to Claim 1.

63.    The Microsoft Accused Infrastructure and Services meet all the limitations of at least Claim 1 of the '028 Patent. A chart presenting a non-limiting example of Microsoft's infringement of Claim 1 of the '028 Patent is attached to this Complaint as Exhibit 5.

64.    On information and belief, Microsoft also actively, knowingly, and intentionally induces infringement of one or more claims of the '028 Patent under 35 U.S.C. § 271(b) by actively

---

contentions pursuant to the Federal Rules of Civil Procedure, the Court's scheduling order and/or local rules.

encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Infrastructure and Services. *See* Ex. 5 (claim chart containing publications of Microsoft's Accused Infrastructure and Services).

65.    Microsoft's infringement is willful, deliberate, and intentional, and Microsoft is acting in reckless disregard of NovaCloud's patent rights. Microsoft is aware of the '028 Patent and its infringement of the same at least as of the filing of this Complaint.

66.    On information and belief, Microsoft performs and/or induces others to perform at least one step of the claimed methods disclosed by the '028 Patent at facilities within this District.

67.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '028 Patent.

## COUNT II: INFRINGEMENT OF THE '867 PATENT

68.    NovaCloud incorporates by reference the preceding paragraphs as if fully stated herein.

69.    Microsoft has been directly infringing the '867 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

70.    Microsoft is now directly infringing and/or indirectly infringing the '867 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

71.    Microsoft derives revenue from the activities relating to the Accused Infrastructure

and Services. As explained below, these are covered by one or more claims of the '867 Patent, including but not limited to Claim 1.

72.     The Microsoft Accused Infrastructure and Services meet all the limitations of at least Claim 1 of the '867 Patent. A chart presenting a non-limiting example of Microsoft's infringement of Claim 1 of the '867 Patent is attached to this Complaint as Exhibit 6.

73.     On information and belief, Microsoft also actively, knowingly, and intentionally induces infringement of one or more claims of the '867 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Infrastructure and Services. *See* Ex. 6 (claim chart containing publications of Microsoft's Accused Infrastructure and Services).

74.     Microsoft's infringement is willful, deliberate, and intentional, and Microsoft is acting in reckless disregard of NovaCloud's patent rights. Microsoft is aware of the '867 Patent and its infringement of the same at least as of the filing of this Complaint.

75.     On information and belief, Microsoft performs and/or induces others to perform at least one step of the claimed methods disclosed by the '867 Patent at facilities within this District.

76.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '867 Patent.

## COUNT III: INFRINGEMENT OF THE '173 PATENT

77.     NovaCloud incorporates by reference the preceding paragraphs as if fully stated herein.

78.     Microsoft has been directly infringing the '173 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or

inducing others to do the same.

79.     Microsoft is now directly infringing and/or indirectly infringing the '173 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

80.     Microsoft derives revenue from the activities relating to the Accused Infrastructure and Services. As explained below, these are covered by one or more claims of the '173 Patent, including but not limited to Claim 1.

81.     The Microsoft Accused Infrastructure and Services meet all the limitations of at least Claim 1 of the '173 Patent. A chart presenting a non-limiting example of Microsoft's infringement of Claim 1 of the '173 Patent is attached to this Complaint as Exhibit 7.

82.     On information and belief, Microsoft also actively, knowingly, and intentionally induces infringement of one or more claims of the '173 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Infrastructure and Services. *See* Ex. 7 (claim chart containing publications of Microsoft's Accused Infrastructure and Services).

83.     Microsoft's infringement is willful, deliberate, and intentional, and Microsoft is acting in reckless disregard of NovaCloud's patent rights. Microsoft is aware of the '173 Patent and its infringement of the same at least as of the filing of this Complaint.

84.     On information and belief, Microsoft performs and/or induces others to perform at least one step of the claimed methods disclosed by the '173 Patent at facilities within this District.

85.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met

with respect to the '173 Patent.

## COUNT IV: INFRINGEMENT OF THE '172 PATENT

86.    NovaCloud incorporates by reference the preceding paragraphs as if fully stated herein.

87.    Microsoft has been directly infringing the '172 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

88.    Microsoft is now directly infringing and/or indirectly infringing the '172 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Infrastructure and Services, and/or inducing others to do the same.

89.    Microsoft derives revenue from the activities relating to the Accused Infrastructure and Services. As explained below, these are covered by one or more claims of the '172 Patent, including but not limited to Claim 1.

90.    The Microsoft Accused Infrastructure and Services meet all the limitations of at least Claim 1 of the '172 Patent. A chart presenting a non-limiting example of Microsoft's infringement of Claim 1 of the '172 Patent is attached to this Complaint as Exhibit 8.

91.    On information and belief, Microsoft also actively, knowingly, and intentionally induces infringement of one or more claims of the '172 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Infrastructure and Services. *See* Ex. 8 (claim chart containing publications of Microsoft's Accused

Infrastructure and Services).

92.    Microsoft's infringement is willful, deliberate, and intentional, and Microsoft is acting in reckless disregard of NovaCloud's patent rights. Microsoft is aware of the '172 Patent and its infringement of the same at least as of the filing of this Complaint.

93.    On information and belief, Microsoft performs and/or induces others to perform at least one step of the claimed methods disclosed by the '172 Patent at facilities within this District.

94.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '172 Patent.

## DEMAND FOR JURY TRIAL

NovaCloud demands a trial by jury of any and all issues triable of right before a jury.

## PRAYER FOR RELIEF

WHEREFORE, NovaCloud prays for the following relief:

A.    A judgment in favor of NovaCloud that Microsoft has infringed, directly, literally and/or under the doctrine of equivalents, the Asserted Patents;

B.    A judgment in favor of NovaCloud that Microsoft is infringing, directly and indirectly, by way of inducement, literally and/or under the doctrine of equivalents, the Asserted Patents;

C.    An order awarding damages sufficient to compensate NovaCloud for Microsoft's infringement of the Asserted Patents, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

D.    A judgment that Microsoft's infringement is and continues to be willful;

E.    Enhanced damages pursuant to 35 U.S.C. § 284;

F.      Entry of judgment declaring that this case is exceptional and awarding NovaCloud its costs and reasonable attorney fees under 35 U.S.C. § 285;

G.      An accounting for acts of infringement;

H.      A judgment and order requiring Microsoft to pay NovaCloud compulsory ongoing post-verdict royalties;

I.      Such other equitable relief which may be requested and to which NovaCloud is entitled; and

J.      Such other and further relief as the Court deems just and proper.

Dated: December 17, 2025.

**MCKOOL SMITH, P.C.**

/s/  *Kevin L. Burgess*

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@McKoolSmith.com
Jennifer L. Truelove
Texas State Bar No.24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9002
Facsimile: (903) 923-9099

John B. Campbell
Texas State Bar No. 24036314
jcampbell@McKoolSmith.com
Stone A. Martin
Texas State Bar No. 24143713
smartin@McKoolSmith.com
Rania Khamees
Texas State Bar No. 24149673
rkhamees@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Nicholas M. Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Clara Bourget
*Pro hac vice* to be filed
cbourget@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Michael E. Catapano
New York State Bar No. 5933700
mcatapano@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444


**ATTORNEYS FOR PLAINTIFF**
**NOVACLOUD LICENSING, LLC.**